IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19 CV 267 MR WCM

| | |
|---|---|
| CHARLENE CHAVEZ )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. )<br>_____ ) | MEMORANDUM AND<br>RECOMMENDATION |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 11, 13), which have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  Following a review of the record, the parties' submissions, and relevant legal authority, the undersigned respectfully recommends that Plaintiff's motion for summary judgment be denied and the Commissioner's motion for summary judgment be granted.

I. Procedural History

On February 26, 2015, Plaintiff filed an application for supplemental security income.  Transcript of Administrative Record ("AR"), pp. 212-216. Plaintiff's claims were initially denied on November 17, 2015, and

---

1 In addition to filing a Motion for Summary Judgment, Plaintiff filed an Addendum setting forth additional facts for the Court's review.  Docs. 11 & 12.

1

subsequently upon reconsideration. AR pp. 106 & 142. Plaintiff thereafter filed a written request for a hearing and a hearing was held on March 29, 2018 where Plaintiff appeared and testified. AR pp. 26-79.[2] Plaintiff was not represented by counsel at the hearing.

On September 17, 2018, the Administrative Law Judge ("ALJ") issued an unfavorable decision. AR pp. 8-19. The Appeals Council denied Plaintiff's request for review of that decision on April 11, 2019. AR pp. 1-5.

On June 7, 2019, Plaintiff, appearing *pro se*, filed the instant action. Doc. 1. Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action and the ALJ's decision is the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 404.981.

## II. The Five-Step Process

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has

---

2 The hearing was held in St Louis, Missouri via video teleconferencing, with Plaintiff present in a hearing room in Charlotte, North Carolina. AR p. 28.

engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam).

The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

The ALJ determined that Plaintiff had the severe impairment of osteoarthritis, the non-severe physical impairment of bilateral rotator cuff tendonitis, and the non-severe mental impairment of adjustment disorder. The ALJ further found that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds. She can frequently climb ramps or stairs, and

3

> frequently balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead bilaterally, and frequently handle and finger bilaterally. She can have no exposure to extreme cold, wetness, excessive vibration, unprotected heights, or hazardous machinery.

AR p. 15.

Utilizing this RFC, the ALJ found that Plaintiff was able to perform her past relevant work as a cash clerk such that Plaintiff was not disabled from June 6, 2012 (Plaintiff's alleged disability onset date) through June 30, 2018 (the date Plaintiff was last insured). AR pp. 18-19.

## IV. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it

does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Analysis

Plaintiff does not set forth specific assignments of error but rather asserts she is unable to work due to chronic hand pain and spasms and that Dr. Kimberly Owens "took me out of work due to my hands failing and mental stress due to my hands unable to keep up!" Doc. 12, p. 1.[3]

### A. Plaintiff's Mental Impairment

Plaintiff bears the burden at Step Two of the sequential evaluation process to show that her impairments are "severe." Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). An impairment is considered "severe" if it significantly limits a claimant's ability to do work-related activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); SSR 96–3p, 1996 WL 374181, at *1. "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has

---

3 Because the ALJ considered the extent of Plaintiff's mental impairments at step two of the sequential evaluation process, and Plaintiff's physical impairments related to her hands when developing Plaintiff's RFC later in his Decision, this Memorandum also addresses Plaintiff's alleged mental and physical impairments in that order.

such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir.1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984)).

As noted above, the ALJ considered Plaintiff's mental impairment (adjustment disorder) to be nonsevere. AR pp. 14-15. In that connection, the ALJ found that Plaintiff had only mild limitations[4] in each of the following functional areas: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. See AR p. 14; 20 C.F.R. § 404.1520a(c)(3) (identifying the four broad functional areas that are considered when rating a claimant's mental impairments).

Relying on Plaintiff's self-reported activities, the ALJ explained that Plaintiff:

> prepares meals, does laundry and cleaning, does yard work, uses public transportation, shops in stores, and manages her own finances. She said she spends time with others by going to church twice weekly, and that she does not have any problems getting along with family, friends, neighbors, or others. She reported she can pay attention for an hour and forty-five minutes, and she has never been fired or laid off from a job

---

[4] Under the regulations, a "mild" limitation means that a claimant's ability to function in the particular area "independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00(F)(2)(b).

because of problems getting along with others.

AR p. 14 (citing Plaintiff's self-reported Adult Function Report, AR pp. 345-352).

Additionally, the undersigned's review of the administrative record reflects that psychiatric evaluations conducted after Plaintiff's alleged disability onset date indicate, at most, mild functional limitations.[5]

Accordingly, substantial evidence supports the ALJ's determination regarding Plaintiff's limitations in the four areas of mental functioning. See Olenick v. Astrue, Civil Action No. 3:11-1359, 2012 WL 3843858, at * 8 (D.S.C. July 31, 2012) (ALJ's finding that claimant had no or only mild limitations in functional areas supported by evidence of Plaintiff's daily activities, including claimant's statements regarding his ability to concentrate and interact with others). Further, the ALJ's finding that Plaintiff's mental impairment was non-severe was appropriate. 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that

---

[5] See AR p. 824 (October 4, 2014 Psychiatric Evaluation noting Plaintiff was able to concentrate, was able to perform four-step tasks, could perform detailed and complex instructions, accept instruction and interact with coworkers and the public, and would have mild impairment with respect to regular workplace attendance and completing a workweek without interruptions); p. 911 (September 24, 2015 Psychiatric Evaluation noting Plaintiff was cooperative with productive levels of concentration; exhibited clear, coherent, organized, and relevant thoughts; was oriented times four; was able to perform simple and repetitive tasks; had a mild limitation with respect to performing detailed and complex tasks; could handle routine stressors; and exhibited no maladaptive behaviors that would limit her ability to interact with others).

your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

### B. Plaintiff's RFC

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). SSR 96-8p, 1996 WL 374184 (July 2, 1996), provides that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Id. at *7. The Commissioner is responsible for determining the claimant's RFC based on all the relevant evidence. Johnson, 434 F.3d at 653. In formulating an RFC, an ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). An ALJ is, however, required to build a logical bridge from the evidence of record to his conclusion. Monroe, 826 F.3d at 189; see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

#### 1. Evaluation of Opinion Evidence

##### a. Dr. Kimberly Owens

Plaintiff asserts that Dr. Kimberly Owens "took me out of work due to my hands failing and mental stress due to my hands unable to keep up!" Doc. 12, p. 1. A review of the administrative record indicates that in a June 12,

8

2012 treatment note, Dr. Owens recommended that Plaintiff obtain "short-term disability/FMLA to help care for mother and self." AR p. 738.[6] Another record indicates that Dr. Owens considered Plaintiff unable to work for an eight-day period in September 2012. AR p. 736 (note written on prescription pad: "Patient unable to work 9/6/12 to 9/13/12.") Finally, in a July 10, 2013 treatment note, Dr. Owens stated: "I do not feel that you are ready to return to work full time until you have had evaluation by workman's comp and appropriate physical therapy and psychiatric evaluation." AR p. 729.

None of these records indicate that Dr. Owens believed Plaintiff could no longer work, or that Plaintiff would be out of work due to her conditions for an extended time. See Barnhart v. Walton, 535 U.S. 212, 219, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002) (a claimant's functional limitations—and not merely his diagnosis—must meet the 12–month durational requirement in order to establish disability).

Further, there is nothing in the records reflecting the standard Dr. Owens used when recommending Plaintiff go on short term disability. See Everhart v. Astrue, No. 5:11CV00031, 2011 WL 5024594, at * 4 (W.D. Va. Oct. 20, 2011) (fact that claimant was purportedly awarded short and long term

---

6 The June 12, 2012 treatment note reflects that Plaintiff reported that she was caring for her mother, who was suffering from Alzheimer's, and that although Plaintiff was working, she "[w]as told if she goes on disability that she could maybe heal better." AR p. 737.

disability benefits under her employer's benefits plan was "barely, if at all, relevant" to whether plaintiff was disabled for purposes of the Social Security Act where record did not contain evidence of the standard used to award benefits under employer's benefit plan). Accordingly, Dr. Owens' recommendations do not require remand.[7]

### b. Other Opinion Evidence

Although not explicitly raised by Plaintiff, the undersigned notes that two other medical professionals indicated that Plaintiff was unable to work. Lauren Cook, a physician's assistant, wrote on March 16, 2018 that "patient will not be able to go back to work due to severe arthritis in her hands." AR p. 1092 & 1113. The ALJ assigned this opinion "little weight" because the ALJ found Ms. Cook's was opinion "conclusory" and failed to "describe functionally what the claimant is able to do." AR p. 18. Similarly, Jenna Wilson, a social worker, stated in letters dated March 28, 2018 and July 20, 2018 that Plaintiff "was forced to resign when her pain became unbearable and various medical professionals recommended disability," and that Plaintiff was "deserving of

---

[7] The ALJ does not discuss these particular medical records in his September 17, 2018 Decision. However, lack of specific reference to these records harmless error. See Gainey v. Berryhill, 3:15-cv-634-RLV-DCK, 2017 WL 3315271, at * 6 (W.D.N.C. Aug. 3, 2017) (explaining that "[t]he harmless error rule applies to this Court's review of Social Security appeals" and that harmless error "results when there is a showing that evidence, even when properly considered by the ALJ, would not result in a different decision.") (internal citation omitted).

10

disability assistance." AR p. 1091 ("I personally feel, she is more than deserving of disability assistance and it would be used to give her a quality of life she deserves and has worked very hard for."); p. 1119 ("I will restate how much I feel Ms. Chavez is deserving of this assistance."). The ALJ also assigned this opinion "little weight" because "it lacks a detailed functional analysis and focuses primarily on the impact of the claimant's reported pain." AR p. 18.

The ALJ's treatment of these opinions was appropriate. "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up some 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) (internal citations omitted); see also 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (providing an example of other factors to be considered when weighing a medical opinion); 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

First, both Ms. Cook's and Ms. Wilson's opinions, to the extent those opinions state that Plaintiff would be unable to work, address the ultimate

11

question of whether Plaintiff was disabled, which is an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d)(1) & 416.927(d)(1). In addition, because the administrative record does not contain treatment records from Ms. Wilson, the ALJ could properly disregard Ms. Wilson's opinion. See Throckmorton v. United States Dep't of Heath & Human Servs., 932 F.2d 295, 297 n. 1 (4th Cir.1990) ("Dr. Baraf did not document his conclusions with attached clinical findings, but rather summarily stated his conclusions in two one-page letters. Section 404.1526(b), 20 C.F.R., provides in pertinent part: 'Any medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques.' Thus, under the regulations, the Secretary could have properly disregarded Dr. Baraf's diagnosis.") (internal citations omitted))

### 2. Evidence Relied on by the ALJ

The ALJ determined that Plaintiff had the RFC to perform light work, but with limitations to "occasional" bilateral overhead reaching and "frequent" bilateral handling and fingering.[8] The ALJ additionally found that Plaintiff

---

[8] In this context, "occasional" means occurring very little up to one-third of the time, while "frequent" means occurring from one-third to two-thirds of the time. SSR 83-10, 1983 WL 31251. Jobs in the category of "light work" may involve "sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls…" Id. "Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work." Id.

12

could have no exposure to extreme cold, wetness, excessive vibration, unprotected heights, or hazardous machinery. AR p. 15. In so finding, the ALJ reviewed Plaintiff's medical records and concluded that:

> In sum, the above residual functional capacity assessment is supported by the evidence that showed she had 5/5 motor strength, 5/5 grip strength, normal muscle tone, an intact gait, and a good response to conservative treatment consisting of physical therapy. Although the claimant had an instance of reduced sensation in the left upper and lower extremities, the record showed she generally had intact sensory function. The established residual functional capacity is also supported by the opinion of the State agency medical consultant from the prior filing.

AR p. 18.

The ALJ's conclusions are supported by substantial evidence. Medical records cited by the ALJ reflect full muscle strength, range of motion, and grip.[9] These records also reflect recommendations for conservative treatment and that Plaintiff responded well to that treatment.[10]

---

9 See e.g. AR p. 445 (October 10, 2012 exam reflecting Plaintiff had full range of motion of the elbow flexors, extensors, 5/5 muscle strength of elbow flexors, extensors, pronators, supinators as well as grip.); p. 932 (June 8, 2016 consultative exam reflecting Plaintiff had full range of motion in elbow and shoulder with some noted discomfort; full range of motion without pain or difficulty in wrist, finger/thumb joints; normal 5/5 muscle strength in upper and lower extremities bilaterally including grip strength); p. 989 (December 14, 2017 note reflecting normal gait, pain with range of motion in neck and left shoulder, 5/5 muscle strength in all major muscle groups and normal overall tone, with intact reflexes, gait, and coordination).

10 See e.g. AR p. 445 (recommending massage, acupuncture, and NSAID cream); p. 712 ("PT was helping a lot."); p. 851 (reporting PT was helpful and that Plaintiff was doing home exercises with weights); p. 939 (April 24, 2017 treatment note stating "I do think she will have trouble typing at the same speed as she did when she was

Further, the ALJ was entitled to rely on the opinion of a state agency consultant, who found that Plaintiff retained the functional ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently with some manipulative limitations. See AR p. 89 (State agency consultant's explanation that Plaintiff "can performs ADLs, perform some household chores, prepare meals, drive, shop, [and] attend church" and that the "most complete and most recent exam was 01/01/2014 by Dr. M. Patel which was entirely normal except for muscle spasm and tenderness – all upper extremity joints had full ROM, muscle strength was normal, deep tendon reflexes good. Will give some exertional and manipulative limitations."). State agency consultants "are highly qualified…physicians and psychologists who are experts in the evaluation of medical issues in disability claims…." SSR 96-6p, 1996 WL 374180, at * 2 (July 2, 1996). Although "[a] 'non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted *by all of the other evidence in the record*[,]' 'the testimony of a nonexamining physician can be relied upon when it is consistent

---

younger given her bilateral hand and digit involvement. I encouraged her to use her hand and fingers as much as tolerated. We talked about natural methods of anti-inflammatory such as berry juice and turmeric."); p. 939 (May 18, 2017 note reflecting that Plaintiff reported that PT "helped dramatically"); p. 953-957 (June 13, 2017 treatment note wherein Plaintiff reported she felt "limited in performing prolonged activities such as cooking for over two hours" and that her response to physical therapy was that her pain decreased, symptoms and strength improved, range of motion increased).

with the record.'" Tanner v. Commissioner of Social Security, 602 Fed. Appx. 95, 101 (4th Cir. 2015) (unpubl.) (quoting Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986) (emphasis in Smith)).

### C. Plaintiff's Ability to Do Past Relevant Work

The ALJ found that, based on her RFC, Plaintiff could perform past relevant work as a cash clerk "as generally performed in the national economy." AR p. 18. Although the regulations define light work as involving "lifting no more than 20 pounds," 20 C.F.R. § 404.1567(b), and Plaintiff testified that her past work as a cash clerk required her to lift 25 pounds, AR p. 45, the ALJ's determination that Plaintiff could perform past relevant work was erroneous.

A claimant is not disabled when she retains the RFC to perform either "[t]he actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 83-61, 1982 WL 31387. As explained in the relevant policy statement:

> A former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the

15

> economy, the claimant should be found to be "not disabled."

Id.

In determining that Plaintiff could perform past relevant work as a cash clerk as such work was "generally performed in the national economy," the ALJ relied on the testimony of a vocational expert, who in turn testified based on the dictionary of occupational titles,[11] that an individual with an RFC identical to Plaintiff's could perform the requirements of cash clerk. See AR pp. 70-71.

The ALJ could appropriately rely on this testimony. See Graves v. Colvin, 12cv643, 2015 WL 5167240, at * 6 (M.D.N.C. Sept. 3, 2015) ("The VE was qualified to determine which jobs Mr. Graves could perform, given the limitations set forth by the RFC, and the ALJ was entitled to rely on the VE's testimony."); 20 C.F.R. § 404.1560(b)(2) (the Commissioner "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity.").

---

11 The Dictionary of Occupational Titles ("DOT") and its companion publication, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles "are Social Security Administration resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations." Pearson v. Colvin, 810 F.3d 204, 205, n. 1 (4th Cir. 2015).

16

## VI. Recommendation

Considering the foregoing, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment (Doc. 11) be **DENIED** and that the Commissioner's motion for summary judgment (Doc. 13) be **GRANTED**.

Signed: April 28, 2020

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).